In the Matter of the Estate of ANDREW ROHR, Deceased.

Surrogate's Court, Orange County, November 3, 1932.

*Stuart Baker*, for the objectors.

*Edgar L. Ryder* [*Charles Wesley* on the brief], for the executrix.

*William F. Stanton*, special guardian.

TAYLOR, S. Numerous objections were filed to this account, but upon the trial thereof a number of them were dismissed for want of proof, some for indefiniteness and others were withdrawn, leaving for consideration, including the matter of construction: (1) Whether the bequest for the perpetual care of decedent's cemetery plot should be paid from the proceeds of the sale of the real property, there being no personalty; (2) whether those named in the residuary clause took a vested or contingent remainder, and whether the shares of those who have died since the testator pass into their respective estates; (3) whether the executrix who had the management of the real property in New York city could charge as a disbursement of the estate reasonable traveling expenses from her residence in Monroe to New York city, and (4) whether a legatee who was also the executrix was entitled to interest upon her legacy until its payment, covering a period of approximately twelve years.

### CEMETERY MAINTENANCE.

It has long been settled law that funeral expenses are preferred claims, and that a reasonable amount may be set aside to provide for the perpetual care of the decedent's own cemetery plot, that

amount to be considered a part of funeral expenses. This is true both under the decisions and by statute. (*Matter of Delafield*, 142 Misc. 536, 539; *Matter of Myers*, 140 id. 442; *Matter of Boyle*, Id. 523; Surr. Ct. Act, § 314, subd. 3.)

Section 234 of the Surrogate's Court Act provides that decedent's real property may be mortgaged, leased or sold for the payment of his funeral expenses. Since the setting aside of a reasonable sum for cemetery upkeep is part of funeral expenses and that real property may be sold for the purpose of paying such expenses it follows naturally that the bequest of $500 to the Dale Cemetery for the perpetual care of decedent's lot may very properly be paid from the proceeds of the sale of the real estate.

### Remainders Vested or Contingent.

The will after providing for two specific legacies devises all the rest of testator's property to his executors in trust to pay out of the income a certain sum annually to Martha L. Osborn during the life of testator's only son and to use the remainder of the income for the support of that son during his natural life. Following these provisions is the provision of which construction is desired:

"*Fifth*. After the death of my son George Henry Rohr and after the payment of all legacies and the execution of said trust and all other provisions of this will, I give, devise and bequeath all the rest, residue and remainder of my estate both real and personal to my nephews and nieces share and share alike as follows: Julia Marquis, Emma Rohr, George Rohr, William Rohr, Catherine Rohr Decker, Henrietta Rohr Acker, Louis Rohr, Charles Rohr, Lena Rohr Acker, Martha L. Osborn and the son and daughter of John Rohr, now deceased, their father's share had he been living."

We may commence our discussion with the often-declared rule that the law favors the vesting of estates and unless a contrary intention is unequivocably expressed it will not be imputed. (*Matter of Inslee*, 233 App. Div. 144, 146; *Connelly* v. *O'Brien*, 166 N. Y. 406, 408.)

The Real Property Law, in section 40 (made applicable to personal property by section 11 of the Personal Property Law), furnishes us with a guide in providing that " it is vested, when there is a person in being, who would have an immediate right to the possession of the property, on the determination of all the intermediate or precedent estates."

*Moore* v. *Littel* (41 N. Y. 66, 80) clearly expresses the rule thus: " ' When there is a person in being,' means when you can point to a human being, man, woman or child; and, ' who would have an immediate right to the possession of the lands upon the ceasing of

the precedent estate,' means that if you can point to a man, woman or child who, if the life estate should now cease, would *eo instanti et ipso facto*, have an immediate right of possession, then the remainder is vested."

The will under consideration in *Clark* v. *Peters* (68 Misc. 252) is very similar to the one now being passed upon. In that case the testator gave to his daughter the use of a share of his estate during her natural life " and after her death " gave and devised the same to her two children, and it was held that the two children took vested remainders upon the death of the testatrix, and upon the death of one of the children before the death of his mother that child's interest passed to his issue.

The Court of Appeals held in *Van Axte* v. *Fisher* (117 N. Y. 401) that the remainder was vested under a will which placed the residuary estate in trust to pay the income to one during his lifetime and to pay the principal or so much thereof as then remained to another (the trustee having been given discretion to invade the principal for the life tenant's use), and that the remainderman having predeceased the life tenant the corpus descended to the remainderman's issue.

The use of words of time, such as " at," " on " and " after," usually refer to the time of the enjoyment of an estate and not to the time of its vesting in interest. (*Connelly* v. *O'Brien*, 166 N. Y. 406, 408; New York Law of Wills, § 955; Remsen Preparation of Wills, 196.)

It is, therefore, held that the named nephews and nieces of the decedent took vested remainders and that some of them having since died the interests or shares of the latter pass to their estates, for vested remainders may be alienated, inherited and devised. (Real Prop. Law, § 59; *Ham* v. *Van Orden*, 84 N. Y. 257.)

### TRAVELING EXPENSES.

The testator owned two tenement houses in the city of New York. The executrix lived at Monroe, N. Y., and there is no doubt that it was necessary for the executrix to go to New York occasionally in connection with the management of the real property. It is conceded the amount charged for traveling expenses, if proper, is reasonable.

Section 285 of the Surrogate's Court Act, fixing the compensation of executors, provides in the first sentence that on an accounting " The surrogate must allow to him his just, reasonable and necessary expenses actually paid by him   *   *   *."

In *Everts* v. *Everts* (62 Barb. 577, 581) the learned judge writing

the opinion stated: " I think the surrogate properly allowed the expenses of the executor in coming from Iowa when the will was proved. The testator knew that such journey must necessarily be made, and it was necessary to enable him to qualify."

There are cases in which disbursements for bookkeeping or the employment of accountants have been approved, for, as was stated in *Matter of Harbeck* (81 Hun, 26; affd., 145 N. Y. 648), " the courts have been careful not to insist that so much clerical work should be either personally performed by an administrator * * * or paid for by him, as to make the acceptance of such a position impossible without considerable personal loss," but that care should be observed to limit such expenditures to instances where they seem to be matter of necessity. (*Matter of Hopson*, 213 App. Div. 395, 399; *Harrison* v. *McAdam*, 38 Misc. 18, 24; *Merritt* v. *Merritt*, 32 App. Div. 442, 452; *Matter of McDowell*, 97 Misc. 306, 321; revd., on other grounds, 178 App. Div. 243; *Matter of Chave*, 227 id. 554, 559.)

## INTEREST ON LEGACY.

The legatee who claims interest is also the executrix. She testified that the two New York city properties which were heavily mortgaged did not return much more than necessary to carry themselves financially, and that until both properties were sold her bank balance did not exceed $300 to $400 at any one time, except for the fact that more than enough cash to pay her legacy was received upon the first sale. I think, however, that the executrix exercised sound business judgment in applying that cash upon one of the mortgages upon the remaining property. So far as loss or benefit to the estate was concerned by this course it made no difference, for if the legacy had been paid and interest thereon stopped, the estate would have paid interest upon the same amount of money in the mortgage on the unsold property. This circumstance takes this case without the rule that where a legatee is also executor no interest can be claimed from the time the estate was in position to pay the legacy. (*Matter of Gerard*, 1 Dem. 244.)

I have been cited to no case directly passing upon the question of the period for which interest may be claimed upon an unpaid legacy, so I shall approach the question by way of analogy.

The right of a legatee to require an executor to account is not barred by the Statute of Limitations unless the representative has by some act openly repudiated his trust and liability. (*Matter of Anderson*, 122 App. Div. 453; *Matter of Meyer*, 98 id. 7; affd., 181 N. Y. 553; *Kellogg* v. *Kellogg*, 169 App. Div. 395.)

In the *Anderson* and *Meyer* cases the periods of time which elapsed were twelve years and thirteen years respectively.

" Where a person is barred from recovering the principal of a debt, he is equally barred from recovering interest thereon " (" Interest," 33 C. J. 189), and " Where no time for the payment of interest is fixed, it is deemed payable with the principal, and the statute does not run against the interest until the debt is barred; but, if the principal debt is barred by the statute of limitations, interest thereon is equally barred." (" Interest," 33 C. J. 257.)

It was said many years ago in *Stevens* v. *Barringer* (13 Wend. 639, 640, 641): " It is well settled that interest cannot be recovered where there is no principal due. Interest is not a part of the debt, but something added to it by way of damage for the detention of the debt. It is incident to the debt, and cannot exist without it. So that had the principal been received, as the defendant's counsel contends, it is clear nothing could be recovered for interest."

It has also been said that " interest is a mere incident or accessary to the principal debt." (*Bander* v. *Bander*, 7 Barb. 560, 561.)

Interest has been defined as " the compensation which is paid by the borrower of money to the lender for its use, and, generally, by a debtor to his creditor in recompense for his detention of the debt " (Bouv. L. Dict. [Baldwin ed.]), and " an agreed or statutory compensation accruing to a creditor during the time that a loan or debt remains unpaid, reckoned usually as a yearly percentage of the sum owed." (Standard Dict.; *Matter of Kruger*, 139 Misc. 907, 908.)

Since there has been no repudiation of this legacy by the executrix the Statute of Limitations has not run against the legacy itself and interest may legally be paid, computed from the time the legacy was due and payable, to the time of its actual payment.